[Civ. No. 21007.   First Dist., Div. One.   Sept. 25, 1963.]

FRANK E. McCAULEY, Plaintiff and Respondent, v. JOHN M. DENNIS et al., Defendants and Appellants.

Eugene K. Lawlor for Defendants and Appellants.

Smallman & Robbins and Fred C. Robbins, Jr., for Plaintiff and Respondent.

BRAY, P. J.—Defendants appeal from judgment in favor of plaintiff in the sum of $11,197.22 and providing for the foreclosure of a mechanic's lien on certain property for said amount.

## QUESTION PRESENTED.

As the court found that defendant was induced to enter into the building contract by plaintiff's fraud, may plaintiff recover for services and materials provided in constructing the building?

## RECORD.

Plaintiff's first amended complaint contains two counts. The first is for a mechanic's lien upon defendants' property for services and materials supplied in the construction of a home on said property, based upon the contract between the parties hereinafter discussed, and an oral agreement amending a portion thereof. Defendants answered, admitting the execution of the written contract, and denying the existence of the oral agreement as alleged by plaintiff. As a separate defense defendants alleged that they were induced to enter into the written contract and an oral agreement to pay for extra work by false representations of plaintiff that the cost of the house together with the cost of extra work would not exceed $38,455.91. Defendants also cross-complained for $2,000 on account of faulty construction and for $10,000 damages because of the false representations as to the overall cost of the house.

The court found that defendant entered into a written

contract, the pertinent terms of which will be hereinafter stated, wherein plaintiff was to construct a residence for defendant[1] on the real property described therein; that thereafter plaintiff and defendant orally agreed that plaintiff was to pay the subcontractors' labor and material for which defendant would reimburse plaintiff;[2] that plaintiff, except as hereinafter noted, had performed all of the conditions on his part to be performed; ''That Defendant was induced to enter and did enter into said contract dated December 3, 1959, in reliance upon Plaintiff's representation that the cost of the work then contemplated would be $30,660.00, including steel in the sum of $7,000.00, but excluding Plaintiff's fee of 10%; said representation made by Plaintiff was false and made by Plaintiff as a positive assertion and made in a manner not warranted by the information he then possessed''; ''That Plaintiff at the time he made the representation believed it to be true and that said representation was not made with the intent to deceive or mislead the Defendant or to fraudulently induce him to enter said contract. However, Plaintiff knew Defendant would rely upon said representation upon entering into said contract''; that the reasonable value of all work and material used in the construction of the residence, ''pursuant to the basic contract,'' excluding builder's fee and steel, was $33,915.05; that the reasonable cost of the material and labor in the steel construction, excluding builder's fee, was $7,200; that the reasonable cost and value of the authorized extras pursuant to the basic contract was $12,438.34; that the total cost excluding builder's fee was $53,557.39; that the total cost paid by defendant is $46,200; that plaintiff is entitled to a 10 per cent builder's fee on $30,660 of the basic contract and on $12,438.34 of authorized extra work, or a total fee of $4,309.83; that the builder is not entitled to a 10 per cent builder's fee on $3,259.05 of the basic contract or on the $7,200 for steel construction; that ''The total due on cost of construction before setoff is $7,357.39, plus $4,309.83 builder's fee, or $11,667.22''; that defendant is entitled to

---

[1]The contract was signed only by defendant John M. Dennis. All of the negotiations and dealings with plaintiff were had by said defendant. The other defendants apparently were joined because of their interest in the real property upon which the residence was built. The court's findings refer to defendant, singularly, meaning defendant John M. Dennis. Unless otherwise noted, we will use the singular term throughout this opinion.

[2]The written contract provided that defendant was to pay the subcontractors on approval of the bills by plaintiff or the architect.

an offset of $470 for defective work;[3] that plaintiff had suffered damage in the sum of $12,693.12 because of defendants' breach of the contract; "That as a direct and proximate result of Plaintiff's negligent misrepresentation, Defendants are entitled to a setoff on the builder's fee of $1,025.90." Defendants have paid $46,200. Judgment accordingly was entered in favor of plaintiff for $11,197.22 and for foreclosure of the mechanic's lien filed on the property.

EFFECT OF PLAINTIFF'S FRAUD.

Defendants do not attack the court's findings as to the reasonable cost of the residence, excluding builder's fees, the amount of the setoff allowed for defective work, nor the correctness of the figures in the court's findings. They contend, however, that as the court found fraud in the inducement of the contract, the court erred in (1) not awarding defendants the amount of damages they contended they sustained by reason of the fraud; (2) in not limiting the basis of recovery for the cost of constructing the residence to $30,000 plus the cost of extra work in the sum of $12,438.34 found by the court, which defendant concedes was ordered; (3) in allowing plaintiff any fees.

1. DAMAGES FOR FRAUD.

Defendant met plaintiff, a licensed general contractor, through the architect who had prepared the plans for defendant's residence. A contract between plaintiff and defendant was entered into by which plaintiff agreed to construct the building for 10 per cent of its cost. This percentage was to apply on the cost of all labor and material whether supplied by plaintiff, subcontractors, or by defendant. "The budget for said construction is tentatively set at $30,000. The contractor's fee will then be $3,000 over and above this figure. . . . If the total cost should exceed $30,000, the owner-builder will pay the contractor 10% of the excess. b. If the total cost should be less than $30,000, the contractor will be paid 10% of this sum, but if a saving is made on any or all specific contracts, the contractor shall receive 50% of the saving involved." Defendant was to pay all bills on approval of plaintiff and/or the architect. Later it was agreed that plaintiff would pay all bills and be reimbursed

---

[3]The findings also referred to a claim of lien of Tresh Electric Company which had not been judicially determined, and provided that if determined to be a lien on defendants' property or if paid by defendants, the amount of such claim should be a setoff.

by defendant. Thereafter the contractor obtained a building permit to construct a $30,000 house.

Inasmuch as plaintiff has not appealed, it is not necessary to set forth the evidence upon which the court based its findings of fraud. Nor is it necessary to detail the discussions and the actions of the parties during the construction of the house and the discovery of the mounting cost thereof.

In *Paolini* v. *Sulprizio* (1927) 201 Cal. 683 [258 P. 380], the court states that a person who has been fraudulently induced to enter into a contract has three courses of action open to him when the fraud has been discovered. He may rescind, repudiating the contract, offering to return what he has received, seeking a restoration to his original position and claiming damages. He may affirm the contract, retain what he has received and sue for damages in an action for deceit. Thirdly, he may set up the fraud as a partial defense or counterclaim without any offer of restitution and recoup his damages in the action brought by the guilty party to the contract. The defense may be complete or only in abatement but the party guilty of the fraud is entitled to have the damages mitigated to the extent of the nonperformance of the other party. (See also *Kent* v. *Clark* (1942) 20 Cal.2d 779, 783 [128 P.2d 868, 142 A.L.R. 576]; *Field* v. *Austin* (1901) 131 Cal. 379, 382 [63 P. 692]; *Toby* v. *Oregon Pac. R. R. Co.* (1893) 98 Cal. 490, 498-499 [33 P. 550].)

Defendant points out that he chose the third course of action, namely, setting up the fraud as a defense and seeking damages on account of it. Thus he affirmed the contract. The cost of the house, excluding builder's fee, was found to be $53,557.39. The court awarded plaintiff a builder's fee, but offset a sum of $1,025.90 on account of the fraud. Defendant's total cost for the house thus came to $57,397.22, excluding costs of suit and interest on the judgment. There was expert testimony of a contractor that the reasonable cost of construction of defendant's house during the relevant period would have been $59,443.89. Thus there is evidence to support the court's implied finding that the value of the house was in the vicinity of $57,000 and the defendant's actual loss on the contract was in the sum of the offset. Defendant cannot recover the amount in excess of that which he expected to pay. He has to show that the actual value of the house was less than the amount for which he is obligated or he must show other damages in mitigation of that amount. ''One defrauded in the purchase, sale or exchange of property is entitled to recover the difference be-

tween the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction. Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled.'' (Civ. Code, § 3343; *Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 101 [237 P.2d 656].) ▮ In affirming he is required to accept the burdens as well as the benefits of the contract. (*Hines* v. *Brode* (1914) 168 Cal. 507, 512 [143 P. 729].)

▮ The rule is exemplified in *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 490-491 [275 P.2d 15], where the court, in a case involving misrepresentations as to the fill on certain property causing the owners to expend more in construction of a building thereon than originally contemplated, stated: ''If the property was worth less than they paid for it, defendant is liable for the difference.[6] [Footnote 6 refers to *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 762-763 [192 P.2d 935], and *Edward Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 561, 577-578 [126 P. 351, 42 L.R.A. N.S. 125].] On the other hand, if the lots were worth what plaintiffs paid for them, plaintiffs were not damaged by their purchase, for even though they would not have bought the lots had they known the truth, they nevertheless received property as valuable as that with which they parted.''

Thus, defendant has shown no damage from the fact that he paid more for the house than he had contemplated and more than plaintiff represented that it would cost. Defendant received value for his money. (See Rest., Torts, § 549, p. 110.)

▮ Defendant contends that the court erred in not allowing him $5,867 ''loss'' claimed to have been sustained by him in the sale of securities made necessary to pay construction costs. This ''loss'' appears to be the difference between the value of the securities at the time of sale and at the time of trial. This ''loss'' is not recoverable. (See *Oliver* v. *Benton* (1949) 92 Cal.App.2d 853, 856 [208 P.2d 375]; Rest., Torts, *supra*, § 549, p. 110.) ▮ Nor is defendant entitled to damages for alleged harassment by creditors and injury to his credit rating. (*Idem.*) Actually, the court allowed defendants damages for the misrepresentation in the sum of $1,025.90, which represents the amount of fees plaintiff would otherwise have been required to pay plaintiff. It repre-

sents 10 per cent of the material and labor cost of the building over the basic $30,660, and the authorized extras of $12,438.34.

Defendant contends also that he should be awarded as damages the amount of the steel contract. Apparently, this claim is based upon the court's finding that the cost of the residence was to be $30,660, including the $7,000 steel cost. As we have hereinbefore pointed out concerning the total cost of the residence which included this $7,000, defendant has had value received therefor.

Actually, what defendants are seeking here is a return by this court to the former "loss of bargain" principle. In *Coleman* v. *Ladd Ford Co.* (1963) 215 Cal.App.2d 90 [29 Cal.Rptr. 832], Mr. Justice Burke said (p. 93) : "Historically, the measure of damages for fraud in real property transactions was generally based on the 'loss of bargain' principle. (*Wood* v. *Niemeyer,* 185 Cal. 526, 532 [197 P. 795] ; *Rogaff* v. *Bartles,* 115 Cal.App. 429 [1 P.2d 517].) The 'out-of-pocket' rule was made statutory by adoption of Civil Code section 3343 in 1935, and in *Jacobs* v. *Levin,* 58 Cal.App.2d Supp. 913, 917 [137 P.2d 500], the court stated that the ' ... "out-of-pocket loss" rule was substituted for the "loss of the bargain" rule.' Under the decision in *Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744, the plaintiff may recover only that which he is actually out-of-pocket, i.e., the difference, if any, between what the property is actually worth and the price he paid for it. This measure is stated in Restatement, Torts, section 549. It is also the federal rule. (*Sigafus* v. *Porter,* 179 U.S. 116 [21 S.Ct. 34, 45 L.Ed. 113].)" The opinion then goes on to state that *Ward* v. *Taggart* (1959) 51 Cal.2d 736 [336 P.2d 534], relaxes this rule where the evidence shows that there is "a combination of constructive trust—unjust enrichment and quasi-contractual relationships which will support an award of exemplary damages in addition to permitting recovery under the 'loss of bargain' rule." (P. 93.)

In *Ward* v. *Taggart, supra,* 51 Cal.2d 736, the court, although it found the defendant to be an involuntary trustee, said (p. 741) : "In the absence of a fiduciary relationship, recovery in a tort action for fraud is limited to the actual damages suffered by the plaintiff."

There is no similarity in the case at bench to that in *Ward, supra.* There a real estate agent made misrepresentations to the plaintiff which enabled the agent to obtain a

secret profit of over $70,000 in a sale to the plaintiff of certain real property. Although the defendant was not the agent of plaintiff the court held (p. 741) that "As a real estate broker, Taggart had the duty to be honest and truthful in his dealings. (See Bus. & Prof. Code §§ 10150, 10176; *Rattray* v. *Scudder*, 28 Cal.2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356])" and held the defendant an involuntary trustee for the benefit of the plaintiffs of the secret profit made by the defendant. It was the violation of that duty which brought the defendant within the provisions of section 2224, Civil Code, which provides that one "who gains a thing by fraud . . . or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Section 2224, Civil Code, is not applicable in our case.

In our case there is no constructive trust situation. There is nothing in the evidence to indicate that at the time of the negotiations between the parties concerning the building contract they were dealing other than at arm's length. This was the time when the misrepresentations were made.

Nor does there appear any evidence of unjust enrichment by plaintiff as the result of his misrepresentations. The court denied plaintiff any fees for services based upon the cost of the building over and above the amounts of the represented cost plus the agreed extra work.

In *Walsh* v. *Hooker & Fay* (1963) 212 Cal.App.2d 450, 458-459 [28 Cal.Rptr. 16], the defendant was the agent of the plaintiff in the purchase of certain stock whose value an employee of the defendant knowingly misrepresented. It was held that the agency relationship between the plaintiff and the defendant was a fiduciary one and that because of that relationship the measure of damages is that provided by sections 1709 and 3333, Civil Code, and not by section 3343, which we are applying here. No such agency relationship appears in our case.

Defendants contend that merely because defendant relied upon the representations made by plaintiff a fiduciary relationship thereby arose. Defendants cite no authorities so holding. *Cox* v. *Schnerr* (1916) 172 Cal. 371 [156 P. 509], cited by defendants in support of this proposition is not in point. That case dealt with a situation in which the grantee of a deed which the court held was obtained by the undue influence of the grantee was and for many years had been the

trusted friend and advisor of the grantor. Nor does *Pryor* v. *Bistline* (1963) 215 Cal.App.2d 437 [30 Cal.Rptr. 376], where undue influence was exerted by a nephew of the person who transferred all her property to him, apply.

2. LIMITING PLAINTIFF'S RECOVERY TO $30,660 PLUS THE $12,438.34 EXTRA WORK.

Defendant's contention that he should not have to pay more than the total of these two sums is answered above under (1). He received full value of all sums he is required to pay for the construction of the house.

3. PLAINTIFF'S FEES.

As hereinbefore shown, the court because of the misrepresentations, limited plaintiff's fees to 10 per cent of $30,660 of the basic contract and of the $12,438.34 authorized extra work, or a total fee of $4,309.83 before setoff of $470 for defective work. Defendant contends that because of the false representations plaintiff should not have received any fee whatever. As stated, the expert's estimate of the value of the house exceeds its cost. There is no evidence nor contention that plaintiff's services were of no value. On the contrary, the evidence is that they were of value. Under the agreement defendant was to pay plaintiff this fee.

The court refused to allow plaintiff a fee on that portion of the cost of the residence which exceeded the amount which plaintiff represented it would cost plus the agreed extra work. To refuse to allow plaintiff a fee on the latter would not be allowing defendant damages for the false representation, for no damage was shown, but would be awarding defendant a penalty for which the law does not provide.

It is lastly contended by defendant that plaintiff may not retain any profit from the contract because a confidential, fiduciary relationship existed between the parties. In support of this proposition defendant relies principally on the provisions of the Business and Professions Code dealing with licensing qualifications of general contractors (§§ 7028.5, 7065, 7069, subd. (b), 7113, 7116). The foregoing sections do not establish that a fiduciary relationship exists between a contractor and a person who engages his services simply on the basis of the engagement nor is it so on the basis of the contract. (*Gonsalves* v. *Hodgson, supra,* 38 Cal.2d 91, 99.) Nor do these sections change the rule of damages. It is true that parties to a contract of the type involved here may enter into a confidential relationship insofar as their duties to disclose material facts are concerned, yet damage still must be

proved. (*Edward Barron Estate Co.* v. *Woodruff Co., supra,* 163 Cal. 561, 574-578.) It is also well to point out again that the court denied plaintiff recovery for fees as to that portion of the construction which it found exceeded the representations.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.