[Civ. No. 29722.   Second Dist., Div. Five.   May 23, 1967.]

DOROTHY WILKENSON et al., Plaintiffs and Respondents,
v. ALBERT LINNECKE, Defendant and Appellant.

Tremaine & Shenk and John W. Shenk for Defendant and Appellant.

Joseph A. Lazaroni and Henry W. Low for Plaintiffs and Respondents.

KAUS, P. J.—Defendant Linnecke appeals from a judgment in the sum of $10,000 compensatory damages plus $1,000 punitive damages. The judgment was based on findings that: 1. Linnecke promised the plaintiff Wood to perfect a security which Wood held to secure a loan he had made to one Madron. 2. The promise was made without intention to perform; and 3. without the security the loan had become worthless.

The basic facts are well known to the parties and need only be outlined: Madron and defendant were both interested in a corporation called Engle-Madron Company. Defendant was vice president and treasurer of the corporation. He apparently took no active part in the running of the corporation, but owned $10,000 worth of its stock, had loaned it $17,000, was the guarantor of several obligations of the firm and gave it financial advice.

In September 1959 Madron asked Wood for a loan of $10,000 which he needed for the corporation.[1] As security he

---

[1]The money was actually provided by plaintiff Dorothy Wilkenson, the daughter of plaintiff Wood's sister-in-law. No question is raised by defendant with respect to the identity of the creditor. All relevant dealings were with the plaintiff Wood. Similarly it seems to be conceded that

gave Wood an assignment of his interest in the estate of one Anna B. Stephenson. Defendant was the executor of that estate.

Several duplicate originals of the assignment were executed.[2] Wood received one copy, defendant another. On February 20, 1960, Wood and defendant had a conversation. Wood told defendant that he had lost his copy of the assignment and requested him to "record" defendant's copy. Defendant said that he was going to go to court early the following week and that he would take care of it. Wood said "I wish you would" and defendant replied "there ain't nothing to worry about. There is plenty of money to take care of it, I will guarantee that." Wood and defendant had been friends for over 15 years and had been in business together.

The assignment was never recorded. Partial distributions of the estate were made in December 1960 and in March 1961. A final distribution was made in May 1961. The money distributed in March was paid to the United States Government which was pressing Engle-Madron for unpaid withholding taxes. The sum obtained in the final distribution was used to pay a corporate obligation on which defendant was a guarantor.

Engle-Madron "folded" in October 1961. The loan was never repaid.

■ Defendant argues that the finding of fraud is not supported by the evidence. ■ The law is clear that the nonperformance of a promise creates an inference that it was made without intention of performing it. *Boyd* v. *Bevilacqua,* 247 Cal.App.2d 272, 292 [55 Cal.Rptr. 610] contains a collection of the pertinent cases. (See also *Butler* v. *Nepple,* 54 Cal.2d 589, 597, fn. 1 [6 Cal.Rptr. 767, 354 P.2d 239].)

■ In any event as plaintiffs point out, the trial court had far more before it than mere nonperformance of the promise:

1. At various times plaintiffs' inquiries conerning the repayment of the money were put off with assurances.

2. Defendant had a very personal interest in the way that the money in the estate was used, since he was himself part

the debt was Madron's personally, not the corporation's. The trial court entered a judgment in the sum of $10,000 for money had and received against Madron. He has not appealed.

[2]The parties call these documents "copies." Since no problem is raised concerning the efficacy of any of the "copies" to accomplish the assignment, we assume that Madron signed them all, which may be inferred from his testimony. For brevity we adopt the term used by the parties.

owner and creditor of the corporation and had in February 1960 guaranteed at least one debt of Engle-Madron.[3]

3. Defendant kept from Wood: that he had failed to file the assignment; that the estate had been closed; and that the assets had been distributed to Madron.

Defendant argues that plaintiffs did not justifiably rely on his promise. This is purely a factual question. The parties were friends and had been in business together. It is common knowledge that it sometimes takes a long time to wind up an estate. Wood was put off by assurances and interest on the debt was being paid. The argument is presented in the wrong court.

Defendant claims that the finding that plaintiffs were damaged is "mere conjecture, surmise and speculation." The attack is twofold: first, it is claimed that the type of fraud perpetrated by defendant makes damages speculative as a matter of law. Second, defendant asserts that plaintiffs did not prove damages in this particular case.

In support of the first contention, defendant relies on such cases as *Miller* v. *Bank of Commerce* (1965, Tex.Civ.App.) 387 S.W.2d 691; *Evans* v. *Burson*, 65 Okla. 114 [164 P. 471] and *Wellington* v. *Small* (Mass.) 3 Cush. 145 [50 Am.Dec. 744]. These cases merely declare that fraudulently inducing a general creditor to delay or defer action to collect a debt, which he might have collected, is nonactionable because the damage is too remote.[4] These cases have nothing to do with the present problem. Plaintiffs were not general creditors, but had an assignment on a specific fund for security and no reason appears why the probate court should not have honored it. True, under section 1020.1 of the Probate Code the court has power to "inquire into the consideration for such assignment . . . and into the circumstances surrounding the

[3]Defendant correctly points out that he did not become liable or potentially liable on some of the corporation's obligations until after the representation was made and that such liabilities could therefore not have been a motive for a false representation on February 20, 1960. We direct his attention to *Koch* v. *Williams*, 193 Cal.App.2d 537, 541 [14 Cal.Rptr. 429] and *Stevens* v. *Marco*, 147 Cal.App.2d 357, 379-380 [305 P.2d 669]. Defendant at all times knew that plaintiffs relied on his promise. Even if the intent not to file the assignment came after the promise, he was bound to disclose his previous inaction. (Rest., Torts, § 551 (2).)

[4]As plaintiffs point out the rule announced in these cases is not unanimously followed. (See *O'Gorman* v. *Haber*, 50 R.I. 351 [147 A. 882]; *Ross* v. *W. D. Cleveland & Sons* (1910, Tex. Civ. App.) 133 S.W. 315.)

execution of such assignment . . . and if it finds that the
. . . consideration paid by any such heir . . . is grossly
unreasonable or that any such assignment . . . was obtained
by duress, fraud or undue influence it may refuse to make
distribution pursuant thereto . . .''

Here there was an assignment of $10,000 in consideration
for a debt of $10,000 on which the assignor had been paying
interest at a reasonable rate. Even though the provisions of
section 1020.1 are not directed solely at ''heir hunters'' (*Estate of Simmons*, 217 Cal.App.2d 580, 586 [31 Cal.Rptr. 861])
we can find nothing in the law to suggest that the probate
court can arbitrarily refuse to honor a perfectly proper
assignment.

█ The evidence that in this particular case the fraud
caused damage because Madron was unable to pay the debt is
rather skimpy, but, we think, adequate.

Madron testified. He admitted receiving the loan and executing the assignment. There was no suggestion of any
defense. The loan was due either when a certain note which he
said he gave for the loan became due, or when the estate was
closed ''whichever one came first.'' At the time of the trial in
October 1964, the note had not been repaid and was, therefore,
three years overdue. The record reeks with Madron's and
Engle-Madron's constant need for money to keep the corporation on its feet.

Although there are exceptions, most people who can do so
pay their undisputed debts. We think the trial court was
entitled to infer, as it evidently did, that the reason why the
loan had not been repaid was that Madron was insolvent.

Defendant raises the problem of the possibility that plaintiffs might collect the debt from Madron after all and thus be
doubly compensated for the loan.

The problem of double compensation is not ripe for any
discussion. We assume that if Madron is found to own assets,
there are adequate principles to be found in law and equity
which will prevent a double recovery, if indeed that is what
the rule should be.

█ Finally defendant attacks the award of punitive damages. The trial court believed plaintiff Wood concerning the
fraudulent representation. His position was corroborated by
Madron. Plaintiffs placed faith and confidence in the representations of an old acquaintance who abused the trust

imposed in him for selfish reasons. We cannot quarrel with the award of punitive damages.

The judgment is affirmed.

Stephens, J., and Frampton, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1967.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.