[Civ. No. 21458.   Second Dist., Div. One.   Oct. 15, 1956.]

MILDRED JEAN COLICH et al., Appellants, v. UNITED CONCRETE PIPE CORPORATION (a Corporation) et al., Respondents.

Grant & Popovich, Irvin Grant and George J. Popovich for Appellants.

Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., Freston & Files, Eugene D. Williams, Ralph E. Lewis and Gwyn S. Redwine for Respondents.

DORAN, J.—Plaintiffs' fifth and sixth amended complaints, substantially identical, seek to establish a trust in 1,465⅓ shares of common stock of United Concrete Pipe Corporation, or the recovery of damages for fraud. The plaintiffs are the four children of Veda and John L. Milich who were married in 1927. John L. Milich died intestate on April 12, 1943; the widow, now Veda Milich Nikevich, is joined as a plaintiff herein for the purpose of submitting to jurisdiction and seeks no relief. The four children were all minors at the time of Mr. Milich's death.

John L. Milich was employed by the defendant United Concrete Pipe Corporation at its Modesto, California, plant, and previous to the marriage with Veda, had purchased from the defendants Kral, Ukropina and Polich, 2,198 shares of common stock in United. The defendants Kral, Ukropina and Polich were, until 1952, directors and officers in charge of United, and owned more than 90 per cent of the stock. In 1950 all outstanding stock was sold to unnamed third persons, not parties herein.

According to the complaint, shortly after the death of John L. Milich in 1943, Veda, "his widow, retained a local attorney (in Modesto) to handle the probate," but before such attorney "could file a petition for letters of administration, defendant Steve Kral, a cousin of John L. Milich, was sent by defendants . . . from Los Angeles for the purpose of taking charge of the probate of the Estate of John L. Milich." It is alleged that Kral represented to Veda "that the defendants would take care of everything," and that if United's attorneys handled the probate, "no attorneys fees would be charged against the Estate"; that Veda, without business experience, relied on Kral's representations, and agreed to have Kral appointed administrator, whereupon the latter dismissed the Modesto attorney, and retained Stephen Monteleone, Kral's attorney in Los Angeles, who proceeded to have Kral appointed administrator of the Milich estate.

It is further alleged that on September 30, 1943, Kral, as administrator, filed in Stanislaus County, California, verified inventory and appraisement listing as assets in the Milich Estate,

| | |
|---|---:|
| 8 shares of Bolsa Chica Oil Corp. stock....$ | 8.00 |
| 2,198 shares, United Concrete Pipe Corp. .. | 24,596.94 |
| 1937 Dodge Sedan...................... | 290.00 |
| Total ........................... $ | 24,894.94 |

and that the appraisal of the United stock "was made by the inheritance tax appraiser upon the basis of a balance sheet furnished . . . by the defendants; that the said balance sheet did not reflect the true financial condition of United," and that the stock was "worth greatly in excess of the sum . . . and said fact was known to the defendants."

The complaint then alleges that "Steve Kral was familiar with the financial affairs of John L. Milich for over 30 years, and represented to the probate court "that all the property listed was the community property of the decedent and his widow," knowing that the United stock had been acquired from the individual defendants "prior to the time of his marriage and was his separate property," which representations were made "on behalf of all of the defendants, in furtherance of said plan to prevent" the United stock "from becoming the property of his minor children and to permit defendants to acquire the stock at a sum greatly below its true value."

It is then alleged that sometime prior to July 31, 1945, defendants requested Attorney Monteleone to prepare an agreement whereby Veda agreed to sell to United the entire 2,198 shares of United stock at a price of $14 per share, or a total of $30,772, which agreement was duly executed by Veda and United. A copy of this agreement was attached to the complaint as Exhibit A. In this agreement it is stated that when the stock was sold to Milich, "said company, by an oral agreement, reserved the option to repurchase said shares," and that Veda, "as his widow, succeeded to all the right, title and interest of said John L. Milich in and to said shares of stock," which representations were false, and known by the defendants to be false at the time the said agreement was executed. It is alleged that Veda, "by virtue of the trust and confidence she had in the defendants," believed that the statements in the agreement were true and relied thereon. in executing the agreement.

There are allegations to the effect that Steve Kral, as administrator, in the first and final account, heard and approved on October 1, 1945, made false statements "intended to deceive and did deceive the court so that the court would approve the same," in failing to advise the court of the existence of the agreement whereby Kral's company, United, would purchase the stock; in stating that the stock was in the hands of the administrator, "whereas, the stock had actually been purchased by the defendant United . . . and

was in the hands of said defendant'' under said agreement with Veda; in stating that all claims against the estate had been paid, whereas the administrator claimed an indebtedness of $7,100.36 upon a promissory note which had never been presented to the court for approval, and ''payment thereof having been obtained by Steve Kral pursuant to an authorization procured from Veda . . . to United . . . authorizing immediate payment of said sum together with other claims against Veda . . . and the Estate . . . out of the proceeds payable under the agreement'' with Veda; that the statement that the stock was community property was false and since it was the separate property of Mr. Milich, ''was required by law to be distributed one-third to Veda . . . and one-sixth to each of his four surviving children.''

The complaint also alleges that neither Kral, as administrator, nor Attorney Monteleone, advised the plaintiffs that the stock was separate property in which the children were entitled to share, nor were the minor children advised of the agreement made with Veda, nor of the true value of the stock. It is also charged that the individual defendants conducted the United business ''as though it were a partnership or family corporation wholly owned and controlled by said defendants,'' treated the earnings of United ''as their own personal earnings,'' and ''so dominated and controlled the operations . . . that the said corporation constituted a mere conduit whereby . . . defendants carried on their own personal business affairs; that in order to prevent fraud or injustice the separate entity of United Concrete Pipe Corporation should be disregarded.''

It is further alleged that in July, 1950, the defendants negotiated a sale of all outstanding stock in United, approximately 60,000 shares, for the sum of $6,287,800. Upon learning of this sale, Veda caused inquiry to be made, and ''after failure of extended negotiations to settle her claim against the defendants arising from the said sale of stock to United, ''instituted an action on the ground of fraud of Steve Kral, seeking relief from the sale agreement, which action is still pending. It is also alleged that Steve Kral, in a deposition taken in that action, stated that the indebtedness of $7,100.36 on a promissory note of John L. Milich, hereinbefore referred to, ''arose by reason of the purchase of stock from said defendants by John L. Milich prior to the ''marriage with Veda''; that until such admission by Kral, Veda ''believed that the said stock was the community property'' of John

and Veda. By reason of these facts, it is alleged that "defendants, and each of them, hold in trust for plaintiffs 1,465⅓ shares of common stock in United. . . ." A second cause of action repleads the allegations, and seeks damages for fraud, both actual and exemplary.

Demurrers to the amended complaints aver that no cause of action is stated because the decree of distribution in the Milich Estate "conclusively determined the ownership of the stock," as community property, and "is an absolute bar to the claim of appellant children," and that such a decree can only be reopened for extrinsic fraud, which is not shown by the complaint. It is also claimed that "The action was filed more than three years after the 'discovery' of the fraud . . . and, accordingly, the Statute of Limitations is an absolute bar to the claims of those appellants who reached their majority prior to the commencement of the statutory period."

The respondents also claim that "The allegations of the complaint are not sufficient to show that the stock was the separate property of the deceased"; and that a cause of action for imposition of a constructive trust has not been stated because it is not shown that United was unjustly enriched; that United "has no property or proceeds upon which a constructive trust can be imposed," and that "it is owned in its entirety by persons who are bona fide purchasers for value without notice of any of the alleged fraud."

Appellants and respondents are agreed on the legal principle that where a judgment has been obtained by extrinsic or collateral fraud, relief can be obtained by an independent suit in equity. Many decisions have been cited stating the general rule and its application to varying situations which, however, involve situations factually dissimilar from those of the present case. As in other matters, the mere statement of an abstract rule is relatively easy but the practical application thereof to a complicated set of facts is the occasion of considerable difficulty.

In *Jorgensen* v. *Jorgensen*, 32 Cal.2d 13, 19 [193 P.2d 728], it is said that while the terms "intrinsic" and "extrinsic" fraud or mistake are generally accepted as appropriate to describe two different categories of cases, "They do not constitute, however, a simple and infallible formula to determine whether in a given case the facts surrounding the fraud or mistake warrant equitable relief from a judgment." Citing the Jorgensen case, a footnote to the opinion in *Thiriot* v. *Santa Clara etc. School Dist.*, 128 Cal.App.2d 548, 551 [275

P.2d 833], says: "Intrinsic fraud may, under appropriate circumstances, furnish a basis for voiding a judgment when a party's adversary has concealed or misrepresented facts in violation of a duty arising from a trust or confidential relation but no such relation obtains in the instant case."

Mere terminology or some abstract classification is, obviously, a matter of secondary importance. The vital question in this and every case must always be whether the successful party has by inequitable conduct, either direct or insidious in nature, lulled the other party into a state of false security, thus causing the latter to refrain from appearing in court or asserting legal rights. This is undoubtedly the gist of plaintiffs' complaint.

As hereinbefore noted, the present appeal is not from judgments rendered after a trial on the merits but from judgments of dismissal entered after the sustaining of demurrers without leave to amend. In two recent cases this court has found occasion to comment on the well established rules in respect to demurrer hearings and the duties of trial courts in reference thereto. In *Griffith* v. *Department of Public Works*, 141 Cal.App.2d 376, 381 [296 P.2d 838] (May 9, 1956) it is said that upon the hearing of a demurrer, "the allegations of the complaint must be regarded as true, and a reviewing court 'is confined to the allegations of the complaint,' as is a trial court, in determining the matter. Other matters, outside the complaint, although doubtless proper subjects for consideration at the trial, should not be considered. Whether plaintiff is able to establish the allegations made, to the satisfaction of a trial court or jury, or what the final outcome may be, are matters of no importance so far as the present inquiry is concerned."

In *Hardy* v. *Vial*, *(Cal.App.) 299 P.2d 973, decided July 11, 1956, citing the Griffith case just mentioned, the reviewing court says: "The question is one of law only, and if the plaintiff has on any theory stated a cause of action, a trial on the factual issues is warranted." Reversing a judgment entered after sustaining demurrers to the complaint, the court comments on "the liberal rule of pleading (which) has always prevailed in this state and plaintiff should be accorded the benefits of such liberal policy . . . The sustaining of a demurrer without leave to amend, and entry of judgment thereon, is a matter of the utmost importance, and, unless a

*A hearing was granted by the Supreme Court on September 6, 1956.

high degree of care be exercised by a trial court, such procedure may easily work irreparable damage by denying plaintiff the right to a plenary trial of the issues."

Such appears to be the situation in the instant case. If the truth of the facts alleged be assumed, as it must be at a demurrer hearing, the defendants, with full knowledge of the facts, have indulged in an inequitable course of conduct well designed to lull the plaintiffs into a sense of apparent security, causing the latter to refrain from presenting the true situation to the probate court. The alleged situation becomes even more aggravated when it is considered that Steve Kral, a cousin of Mr. Milich, not only occupied the fiduciary position of administrator but was also one of the managing directors of United, the purchaser of the stock from Mrs. Milich. A trial court or jury might well believe that the defendants' concealment and misrepresentations effectually prevented the plaintiffs from asserting in court the legal rights flowing from Mr. Milich's separate ownership of the United stock. And, if the decree of distribution was thus fraudulently obtained, it cannot be deemed conclusive in determining that the stock was community property in which the minor children would have no interest.

Section 2235 of the Civil Code provides that "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

Section 192, comment d, of the Restatement of Restitution, reads as follows: "A fiduciary violates his duty to the beneficiary where he purchases for himself individually property entrusted to him for sale, but also where he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale. *Thus, where the fiduciary sells the property entrusted to him to a corporation in which he has a controlling or substantial interest,* the sale can be set aside unless the corporation is a bona fide purchaser." (Italics added.)

Nor is any substantial merit found in the other assertions made in the respondents' brief. Timely commencement of the action after discovery of the fraud, is sufficiently alleged in the complaint. As said in *Bliss* v. *Martin*, 74 Cal.App.2d 500, 506 [169 P.2d 61], "Whether a certain circumstance within the knowledge of an alleged defrauded party is suffi-

cient to make it the duty of such person to investigate is a question of fact to be determined by the jury or the trial court.''

The respondents' contention that ''The allegations of the complaint are not sufficient to show that the stock was the separate property of the deceased,'' predicated upon a forced and unnatural interpretation of the language used, is untenable. There is likewise no merit in respondents' charge that no cause of action in reference to a constructive trust has been stated. In reference to these matters and other criticisms of the complaint, the respondents' brief has commented upon matters outside the pleading, which, as hereinbefore mentioned, are not open for consideration on the hearing of a demurrer.

Plaintiffs' complaint, as it stands, is deemed to state a cause of action necessitating a trial on the merits. In certain particulars, doubtless, the complaint could be improved, but under the liberal rule of pleading in force in this state, it was prejudicial error to sustain demurrers thereto and enter judgments of dismissal. Plaintiffs, who were minors and especially entitled to judicial protection, must not be thus deprived of an opportunity to present evidence at a plenary hearing. Whether plaintiffs will be able to prove the material facts alleged, is a matter of no importance in reference to the present inquiry.

The judgments are reversed with instructions to overrule the demurrers, to allow the respondents a reasonable time to file answers, if so advised, and to proceed to a trial on the merits.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 8, 1956, and respondents' petition for a hearing by the Supreme Court was denied December 12, 1956. Spence, J., was of the opinion that the petition should be granted.