[No. B014118. Second Dist., Div. Seven. Oct. 20, 1988.]

ELLIOTT L. AHERONI, Plaintiff and Appellant, v.
ANTHONY PAUL MAXWELL, Defendant and Appellant.

## COUNSEL

Elliott L. Aheroni, in pro. per., for Plaintiff and Appellant.

Anthony Paul Maxwell, in pro. per., and Dennis A. Fischer for Defendant and Appellant.

## OPINION

LILLIE, P. J.—Plaintiff appeals from order setting aside defendant's default and the ensuing default judgment. ■ ■■■ 1.) Defendant cross-appeals from the judgment.[1]

### FACTS

Plaintiff sued defendant[2] to recover attorney fees for legal services rendered by plaintiff to defendant at defendant's request. Defendant filed an answer which he described as "tentative." The court rejected that answer and on July 3, 1984, gave defendant 30 days to answer. On August 7 defendant applied ex parte for an order extending the time to answer. In his declaration in support of the application, defendant stated that since November 1981 he has been incarcerated in the Los Angeles county jail; on July 21, 1984, defendant was released from the disciplinary module in the jail and returned to the "pro. per." module; on his return he discovered that during his absence a flood had destroyed the complaint and other documents in this action which he kept in his cell. Pursuant to defendant's application the court extended the time to answer to September 4, 1984. No answer was filed on that date or thereafter. On September 20, 1984, defendant's default was entered by the clerk. On November 2, 1984, following the presentation of evidence, the trial court (Judge Kaufmann) entered default judgment for $59,633.95, plus costs, in favor of plaintiff and against defendant.

On March 27, 1985, defendant filed a motion to vacate the default judgment on the grounds that it was the result of (1) extrinsic fraud on plaintiff's part consisting of willful misrepresentations, and (2) excusable neglect on defendant's part caused by his status as a prisoner "denied the use of the jail law library and other materials necessary to plead his case before this court." Defendant's declaration in support of the motion stated:[3] In July 1984 defendant spent approximately 14 days in isolation for jail violations.

---

[1] An order setting aside a default and a default judgment is appealable. (*Jones* v. *Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 928 [206 Cal.Rptr. 924]; *Taliaferro* v. *Davis* (1963) 216 Cal.App.2d 860, 863 [31 Cal.Rptr. 443]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 108, p. 127.) Plaintiff's appeal from an order vacating a default judgment permits the defendant to cross-appeal from the judgment. (*Don* v. *Cruz* (1982) 131 Cal.App.3d 695, 699-700 [182 Cal.Rptr. 581].)

Defendant purports to cross-appeal also from a postjudgment order. The propriety of that appeal is addressed in part II of Discussion, *post*.

[2] The complaint named as defendants Anthony Maxwell and Marie Rodriguez. Inasmuch as Rodriguez is not a party to the within appeal, we regard Maxwell as the sole defendant.

[3] The declaration improperly combined conclusions and arguments with statements of fact. Our summary is limited to the facts set forth in the declaration.

During that time he was waiting for two books he needed to prepare his answer. Defendant received the books late in July and was released from the disciplinary module on July 26, 1984. Upon his release he learned of a flood in his cell in the pro. per. module during his absence. Because the jail staff took no action to protect his belongings which he left in the cell, the complaint in this action was destroyed. On or about August 1, 1984, defendant telephoned plaintiff and explained that he had not yet answered and was filing for additional time to answer. Plaintiff replied that defendant already had answered and that plaintiff would not seek a default. Defendant applied for an extension of time to answer partly because of the flood and partly because he was not certain whether or not he was required to file an answer. The application was "a safety precaution designed to protect [defendant's] rights." On August 31, 1984, defendant was removed from the pro. per. housing module. From that date until November 1, 1984, he was denied the use of legal materials and access to the jail law library.

The trial court (Judge Wayne) granted the motion "based upon the court's inherent power to grant equitable relief on the basis there was extrinsic fraud in letting the defendant think he had an extension of time to file an answer." The court ordered the default and the default judgment set aside and deemed defendant's proposed answer, submitted with the motion, to have been filed and served on the date of the order.

DISCUSSION

I

APPEAL FROM ORDER VACATING DEFAULT AND DEFAULT JUDGMENT

■ Where, as in the present case, a motion to vacate default judgment is made more than six months after the default was entered, the motion is not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473,[4] but rather is directed to the court's inherent equity power to grant relief from a default or default judgment procured by extrinsic fraud or mistake. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700]; *Aldrich* v.

---

[4] Code of Civil Procedure section 473 provides in pertinent part: "The court may, upon such terms as may be just, relieve a party . . . from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken . . . ."

*San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 737 [216 Cal.Rptr. 300]; *Stiles* v. *Wallis* (1983) 147 Cal.App.3d 1143, 1147 [195 Cal.Rptr. 377].) In the present case relief was granted on the ground of extrinsic fraud. The court may grant relief under its inherent equity power if, because of the fraud of his opponent, the aggrieved party was prevented from presenting his claim or defense to the court. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116]; *DeMello* v. *Souza* (1973) 36 Cal.App.3d 79, 85 [111 Cal.Rptr. 274].) ■ "Two essential conditions are found in a classic case in equity which seeks to set aside a judgment: first, the judgment is one entered against a party by default under circumstances which prevented him from presenting his case; second, these circumstances result from extrinsic fraud practiced by the other party or his attorney." (*Otani* v. *Kisling* (1963) 219 Cal.App.2d 438, 442 [33 Cal.Rptr. 239].) The vital question is "whether the successful party has by inequitable conduct, either direct or insidious in nature, lulled the other party into a state of false security, thus causing the latter to refrain from appearing in court or asserting legal rights." (*Colich* v. *United Concrete Pipe Corp.* (1956) 145 Cal.App.2d 102, 107 [302 P.2d 445].) ■ A party who seeks to have his default vacated under the court's equity power must make a stronger showing than is necessary to obtain relief under section 473. (*Gribin Von Dyl & Associates, Inc.* v. *Kovalsky* (1986) 185 Cal.App.3d 653, 660 [230 Cal.Rptr. 50].) "[D]uring the period when relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d 1051, 1071.)

■ According to his declaration, on August 1, 1984, defendant told plaintiff that he planned to apply for an extension of time to answer; plaintiff replied that defendant already had answered and that plaintiff would not seek a default. Our dissenting colleague insists it reasonably may be inferred that defendant relied on plaintiff's assurance that an answer filed by defendant's mother would suffice and his default would not be taken, and that defendant sought an extension of time to answer merely in order to decide whether he wanted to file a separate answer for himself. We do not perceive the evidence as subject to such an inference. Defendant did not claim that he failed to file an answer because of his reliance on plaintiff's statements and the record does not establish such reliance. Quite the contrary, it shows that on August 7, 1984, after his conversation with plaintiff, defendant applied for an extension of time to answer, thereby indicating he ignored plaintiff's assurance that an answer had been filed and no default would be taken. Defendant's declaration in support of his motion to vacate default states that his "motion for extension of time to answer was a *safety*

*precaution* designed to protect his rights." (Italics added.) Why would defendant need added time to file an answer as a "safety precaution" if not to forestall entry of his default? While defendant asserted that plaintiff assured him an answer was on file for him and his default would not be taken, the mere fact of such assurance alone does not establish extrinsic fraud warranting relief from default. ■ Reliance is a key element of fraud. (See *Bezaire* v. *Fidelity & Deposit Co.* (1970) 12 Cal.App.3d 888, 893 [91 Cal.Rptr. 142].) "[A]n inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation." (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr. 388, 556 P.2d 750].) ■ No such inference arises here because defendant's conduct in obtaining an extension of time to answer—as a safety precaution—is wholly inconsistent with his reliance on plaintiff's assurance that the answer of defendant's mother sufficed and that plaintiff would not seek his default. "Just as a precaution," as the reason defendant gave for having sought the time extension, points unerringly to the conclusion that he did not believe plaintiff's promise not to take his default, and wanted to be sure he had an answer on file.

In short, defendant asserted that his failure to answer was due to conditions in the jail where he was confined, not to his reliance on plaintiff's statement that an answer already was filed and plaintiff would not seek a default. ■ Discretion is abused in granting relief from default if the moving party's supporting declaration fails to set forth facts sufficient to constitute grounds for relief. (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 280 [75 Cal.Rptr. 848].) ■ The trial court abused its discretion in setting aside the default and default judgment on the ground of extrinsic fraud.

■ A lower court decision will not be overturned merely because it is given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Maruman Integrated Circuits, Inc.* v. *Consortium Co.* (1985) 166 Cal.App.3d 443, 450 [212 Cal.Rptr. 497].) ■ Defendant contends the order setting aside his default is sustainable on the alternative ground of the motion to vacate, viz., excusable neglect. ■ "In some cases . . . , the ground of relief is not so much the fraud or other misconduct of the [plaintiff] as it is the excusable neglect of the [defendant] to appear and present his . . . defense. If such neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief is present, and is often called 'extrinsic mistake.'" (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 211, pp. 614-615, italics omitted; see also *In re*

*Marriage of Wipson* (1980) 113 Cal.App.3d 136, 141 [169 Cal.Rptr. 664].) However, a motion to vacate a judgment should not be granted where the party requesting equitable relief was guilty of inexcusable neglect. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 345 [165 Cal.Rptr. 792, 612 P.2d 882].)

■ Defendant relied on conditions in the jail where he was confined to excuse his failure to prepare and file an answer. The record does not show those conditions were such as to establish excusable neglect on his part. Defendant's declaration in support of his motion to vacate default judgment discloses the following: Late in July 1984 defendant, in jail, received the books he needed to prepare his answer; on July 26, 1984, he was released from the disciplinary module and returned to the pro. per. housing module of the jail; defendant learned that during his absence a flood in his cell destroyed the complaint which he was required to answer; after the flood defendant thought it would be better to obtain the entire file in plaintiff's action against him; accordingly, he prepared an application for extension of time to answer. The ex parte application, filed August 7, 1984, was granted the same day by an order which gave defendant until September 4, 1984, to answer. Defendant's declaration states that on August 31, 1984, he was removed from the pro. per. housing module; from that date until November 1, 1984, he was denied the use of legal materials and access to books in the jail law library. Defendant failed to explain why he was unable to prepare and file an answer to plaintiff's complaint between August 7 and August 31 except to say that from August 1-13 he was preparing for a hearing in the criminal case against him (dismissed August 24, 1984). After the conclusion of those preparations, 16 days remained within which defendant could have prepared his answer before he was denied the use of the prison law library and other pro. per. privileges. No excuse was offered for defendant's failure to prepare and file an answer in the present action within that 16-day period.[5] ■ The moving party has the burden of showing good cause for relief from a default or a default judgment. (*Tunis* v. *Barrow* (1986) 184 Cal.App.3d 1069, 1080 [229 Cal.Rptr. 389].) ■■ Defendant failed to sustain that burden as to either of the grounds—extrinsic fraud and extrinsic mistake—on which he sought relief.

Defendant insists that the order vacating his default does not constitute an abuse of discretion because he was diligent in seeking relief from de-

---

[5] According to the dissent, excusable neglect is established because revocation of defendant's pro. per. privileges on August 31, 1984, prevented his filing an answer within the final five days of the four-week extension granted him. In our view defendant was obliged to account for the entire four-week extension. He totally ignored the 16-day period from August 14 to August 30 during which, for all that appears from his declarations, he could have prepared and filed his answer. The fact he was foreclosed from doing so during the final five days of the extension does not show excusable neglect.

fault. ■ "The granting of equitable relief requires not only a showing of appellant's satisfactory excuse for not having made his claim or defense in the original action, but also a showing of his diligence in seeking relief after discovery of the facts." (*Humes* v. *MarGil Ventures, Inc.* (1985) 174 Cal.App.3d 486, 499 [220 Cal.Rptr. 186]; see also *Stiles* v. *Wallis, supra,* 147 Cal.App.3d 1143, 1147-1148.) The primary requirement for the granting of equitable relief is a satisfactory excuse for not presenting a defense to the original action; diligence is a further requirement, not an alternative to the first requirement. Inasmuch as defendant made no showing that his failure to file an answer was due to extrinsic fraud or mistake, the additional factor of diligence becomes irrelevant. It is therefore unnecessary to determine whether or not defendant was diligent in seeking relief from default.

## II

### CROSS-APPEAL FROM DEFAULT JUDGMENT AND POSTJUDGMENT ORDER

### A. *Default Judgment*

■ A defendant may appeal from a default judgment taken against him, but his attack is limited to jurisdictional matters and fundamental pleading defects. (*City Bank of San Diego* v. *Ramage* (1968) 266 Cal.App.2d 570, 582 [72 Cal.Rptr. 273]; *Nemeth* v. *Trumbull* (1963) 220 Cal.App.2d 788, 790 [34 Cal.Rptr. 127].) ■ Defendant contends the trial court was without jurisdiction to enter default judgment against him in this action to recover attorney fees because, as shown by defendant's declaration, plaintiff did not give defendant notice of his right to arbitration of attorney fees required by Business and Professions Code section 6201, subdivision (a).[6] The contention lacks merit. Section 6201 does not provide that an attorney's failure to give his client notice of the client's right to arbitration deprives the court of jurisdiction over the attorney's "action to recover fees." It provides merely that failure to give such notice "shall be a ground for the dismissal of the action." The burden thereby is placed on the defendant-client to move for dismissal based on the plaintiff-attorney's failure to

---

[6] Business and Professions Code section 6201 provides in pertinent part: "(a) The rules adopted by the board of governors shall provide that, except as to an action filed in small claims court, an attorney shall forward a written notice to the client prior to or at the time of service of summons in an action against the client for recovery of fees covered by the provisions of this article. The written notice shall be in such form as the board of governors may prescribe, but shall include a statement of the client's right to arbitration under this article. Failure to give this notice shall be a ground for the dismissal of the action. [¶] The rules adopted by the board of governors shall provide that the client's failure to request arbitration within 30 days after receipt of notice from the attorney shall be deemed a waiver of the client's right to arbitration under the provisions of this article."

give the required notice. The record does not show that defendant moved for dismissal of the within action on the ground he was not given notice of his right to demand arbitration. Accordingly, despite lack of the statutorily required notice, the trial court had jurisdiction to enter default judgment in favor of plaintiff and against defendant.

## B. *Postjudgment Order*

On November 7, 1984, pursuant to plaintiff's ex parte application, the trial court (Judge Letteau) made an order modifying preliminary injunction to direct an escrow company to release to plaintiff the sum of $59,832.95 in satisfaction of the default judgment entered November 2, 1984. ■ Defendant purports to cross-appeal from that order "based upon plaintiff's appeal from the order . . . setting aside default judgment."

The cross-appeal procedure (Cal. Rules of Court, rule 3(c)) cannot have been intended to give parties the means of securing review, by cross-appeal, of matters not related to the order or judgment which is the subject of the original appeal. While plaintiff's appeal from an order vacating default judgment authorizes defendant's cross-appeal from the judgment (*Don* v. *Cruz, supra,* 131 Cal.App.3d 695, 699-700), there is no authority for the proposition that such an appeal supports a cross-appeal from a postjudgment order enforcing the judgment. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 392-398, pp. 391-394.) Logically, that order is not a proper subject of defendant's cross-appeal because it has nothing to do with the propriety of either the entry of default or the default judgment—it is an order made after entry of judgment for satisfaction of the judgment. Accordingly, we hold that the order modifying preliminary injunction is not reviewable on this cross-appeal based on plaintiff's appeal from order vacating default and default judgment. The order modifying preliminary injunction is appealable as a postjudgment order which affects the judgment by enforcing it. (See *Olson* v. *Cory* (1983) 35 Cal.3d 390, 400 [197 Cal.Rptr. 843, 673 P.2d 720]; *Lovret* v. *Seyfarth* (1972) 22 Cal.App.3d 841, 852 [101 Cal.Rptr. 143].) However, even if we construe the notice of cross-appeal liberally as an attempt to appeal directly from that order (see Cal. Rules of Court, rule 1(a)), the appeal fails because the notice of cross-appeal was not filed until May 20, 1985, more than 180 days after entry of the order. (*Id.,* rule 2.)

It follows that the purported cross-appeal from order modifying preliminary injunction must be dismissed.

## DISPOSITION

The order setting aside defendant's default and the default judgment is reversed. The judgment is affirmed. Defendant's purported cross-appeal

from the postjudgment order modifying preliminary injunction is dismissed. Plaintiff shall recover his costs on appeal.

Kolts, J.,* concurred.

**JOHNSON, J.**—I respectfully dissent. In this case, a "pro. per." and incarcerated defendant is denied his day in court and thereby loses the opportunity, among other things, to present what is, if true, probably a meritorious motion to dismiss the action against him. I have no serious quarrel with the majority's articulation of the general principles of law which apply to motions to vacate default judgments. But I do disagree with the majority's conclusion the trial judge abused her discretion in granting the motion to set aside the default judgment and would affirm that order.

The majority first concludes the trial court abused its discretion in vacating the default judgment on grounds of extrinsic fraud. The record allegedly reflects plaintiff did not "rely" on defendant's representations that he would consider the answer filed by defendant's mother a sufficient answer *and would not seek a default judgment against defendant for failing to file an answer*. The majority infers this absence of reliance from the fact defendant applied for an extension of time to answer. The majority then dismisses the alternative ground for vacating the default judgment—defendant's "extrinsic mistake" (or excusable neglect) in failing to file his answer within the 30-day extension period. The majority concedes the jail authorities made it impossible for defendant to complete and file his answer during the final five days of that thirty-day period. However, it is argued his failure to complete and file his answer in the preceding 24 days demonstrates defendant was guilty of inexcusable neglect.

I respectfully disagree with both positions. The California Supreme Court has reminded us recently how reluctant we should be, as appellate courts, to reverse a trial court which has acted to *vacate* a default judgment. "It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citation omitted.] Therefore, when a party in default moves promptly[1] to seek relief, *very slight evidence* is required to justify a trial

---

* Assigned by the Chairperson of the Judicial Council.

[1] *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474 [243 Cal.Rptr. 902, 749 P.2d 339] involved a timely filed Code of Civil Procedure section 473 motion. In the instant case appellant was a week late in filing his motion for relief from default under section 473. Yet there was ample evidence the trial court could have credited which demonstrated appellant had prepared this motion well within the statutory period. The only reason he did not file it on time was because of restrictions imposed on him by jail authorities. Thus, the motion was as "prompt" as it could be. Surely *the policy behind Shamblin does not lose its force under these circum-*

court's order setting aside a default. [Citation omitted] . . . The trial court's order granting relief was within its sound discretion and, in the absence of a *clear showing of abuse of discretion,* should not be disturbed. [Citation omitted.]" (*Shamblin* v. *Brattain, supra,* 44 Cal.3d 474, 478, italics added.)

In my opinion, the trial court did not abuse its discretion in inferring defendant was "lulled into a state of false security" about whether plaintiff would seek a default judgment against him should he fail to file a timely answer. True, one *could* reasonably infer from the fact he filed an application for an extension to file an answer that he had not relied on plaintiff's acknowledgement the answer filed by defendant's mother would suffice. On the other hand, one also could reasonably infer he was lulled into thinking defendant would not seek a default judgment for any failure to file a further answer and sought an extension merely to determine whether he wanted to file a different or more refined answer than his mother had. Remember plaintiff's counsel not only stated he considered defendant had already answered the complaint, he *promised* not to seek a default judgment for failure to file an answer. And he did so not once but twice, the second time after respondent had indicated he was seeking an extension of time to file an answer.

From what plaintiff's counsel said not once but twice, defendant could well have considered he already had a viable answer on file in the case, one that would foreclose the possibility of a default judgment. With that worry behind him, he nevertheless applied for an extension of time not for the purpose of filing *the* answer in the case but to consider filing another answer.

Thus, the application for an extension of time is entirely consistent with a finding defendant was lulled into a state of false security about the necessity of actually filing the answer for which defendant had requested the extension of time. Default would not be allowed against a defendant who had lodged a sufficient answer, then requested an extension to file an amended answer but *for whatever reason* failed to file that amended pleading within the time allotted. Nor should it be allowed against this defendant who had every reason to believe he already had an answer on file which his opponent guaranteed him would protect him against default and thus who had every reason to believe he would not risk the consequence of default if it proved undesirable or impossible *for whatever reason* to come up with a better pleading during the extension period. The reason respondent gave for hav-

stances, especially considering the trial court was hearing appellant's motion in what is denominated an *equitable* proceeding.

ing sought the time extension—as a precaution—actually supports rather than undercuts the inference he relied on appellant's guarantee to protect him against default but wanted time to consider filing a better answer. Would not most lawyers and most pro. per. litigants be suspicious about the *potency* of their pleadings if the other side told them: "What was filed on *your* behalf already is good enough for *us*?" So would it not be logical despite relying on the other side's promise they would not seek a default nevertheless to ask for an extension of time "just as a precaution" in order to have an opportunity to see if it was possible to come up with a better answer to their complaint.

This is a reasonable inference and one which supports the trial court's decision to vacate the default judgment. Accordingly, it likewise supports the conclusion the trial court did not abuse its discretion and its judgment should be affirmed. For, as the California Supreme Court has again reminded us recently, "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When *two or more inferences can reasonably be deduced* from the facts, the reviewing court has *no authority to substitute its decision* for that of the trial court. [Citations omitted.]" (*Shamblin, supra,* 44 Cal.3d at pp. 478-479, italics added.)

Even assuming "extrinsic fraud" were not present in this case, it poses a clear—indeed an extreme—example of "extrinsic mistake." Here the defendant was taken away from his law books and his legal research and indeed told he could not pass out or receive written materials some five days before his answer was due. What the majority opinion in effect holds is that it is *"inexcusable"* for a party whom the court has expressly given *30 days* to file a pleading to fail to file that pleading *within 24 days*. The defendant here happens to have been an incarcerated pro. per. litigant. But I cannot help wondering how many answers are filed during the 25th through 30th days by even large, sophisticated law firms. To put it another way, assume five days before their answers were due, lawyers in this state were suddenly locked out of their offices and told it was too late to file. What percentage do you imagine would find themselves to have engaged in "inexcusably neglectful" conduct, according to the majority's definition, and to have exposed their clients to default judgment, because they had not yet filed their answers? Would it be out of line to expect 50 percent? 60 percent? More?

Even accepting the highly improbable proposition only a handful of lawyers ever wait until the last few days before the due date to file their pleadings, that would hardly make it "inexcusable" for an individual lawyer or a pro. per. party to take that long to do so. The fact the defendant here did not actually file a final, refined draft by the 24th day (out of the 30 the court expressly allowed) in no sense suggests he was not moving in a

reasonably diligent fashion toward a timely filing of this pleading. It takes time to research and write an answer. By the 24th day a lawyer or pro. per. litigant may still be in the last stages of research or the early phases of drafting yet be well on his way toward completing the final version in ample time to file it on or before the 30th day.

Since I reject the majority's definition of what constitutes "inexcusable" behavior in preparing and filing a pleading due within 30 days, I have no trouble concluding defendant did not behave "inexcusably" in failing to complete and file his answer within 24 days. Moreover, the record reflects the prison authorities took away entirely his ability to complete and file the answer during the final five days. It is difficult to imagine a more definitive and justifiable excuse for not having filed within those five days. Accordingly, I find defendant's failure to timely file his answer was the product of "extrinsic mistake" as that term is defined in the cases cited in the majority opinion. This supplies a second independent and sufficient ground for the trial court's decision to vacate the default judgment.

It is not essential defendants establish they possess a valid defense before they will be granted relief from a default judgment. Nonetheless, it is worthwhile noting this defendant presents allegations which, if true, would be sufficient to dismiss this complaint on the merits were his motion to vacate to be granted. As the majority opinion concedes, defendant claims, at least, that plaintiff did not comply with Business and Professions Code section 6201 by supplying him with a written notice he was entitled to arbitrate this fee dispute. If true, this failure alone would provide grounds for outright dismissal of plaintiff's action. Thus, to take away the opportunity to defend against this case on the merits could well work a real injustice on this defendant, assuming once again the truth of his allegations.

The dangers of deciding this sort of claim without reaching the merits is highlighted by this case. For, if Maxwell's allegations are true, the majority opinion may reward a lawyer plaintiff who first failed to notify a pro se defendant of his right to arbitration, then told him a further answer was not required and promised he would not seek a default judgment for failing to answer in a timely fashion, then entered a default a few days after the answer was due. At oral argument plaintiff contended he had complied with Business and Professions Code section 6201 and had the documentation to prove it. That may well be the case. But this is precisely why we have trials—to get to the truth and to decide disputes on the merits.

For these reasons, I would affirm the trial court's exercise of discretion in granting the motion to vacate the default judgment.

A petition for a rehearing was denied November 15, 1988, and respondent's petition for review by the Supreme Court was denied January 18, 1989.