Filed 12/23/15  SML Consultants, Inc. v. Southern California Edison Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SML CONSULTANTS, INC., | D068688 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. CIVDS1112007) |
| SOUTHERN CALIFORNIA EDISON COMPANY, | |
| Defendant, Cross-complainant and Respondent; | |
| SHARON MARTINEZ, | |
| Cross-Defendant and Appellant | |

APPEAL from a judgment of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Affirmed.

Law Office of Chad Biggins and Chad Biggins, for Plaintiff, Cross-defendant and Appellant, SML Consultants, Inc., and Cross-defendant and Appellant Sharon Martinez.

Michael J. Barrett for Defendant, Cross-complainant and Respondent Southern California Edison Company.

INTRODUCTION

SML Consultants, Inc. (SML) and its principal, Sharon Martinez, appeal from a judgment in favor of Southern California Edison Company (Edison) on SML's complaint for breach of contract and common counts and on Edison's cross-complaint for fraud and restitution. SML and Martinez contend we must reverse the judgment because the trial court failed to decide certain material issues and permitted Edison to pursue claims for which Edison lacked standing. We are unpersuaded by these contentions and affirm the judgment.

## BACKGROUND

*Professional Services Agreement*

In 2006, SML entered into a professional services agreement (agreement) with Empire Land, LLC (Empire), under which SML agreed to "provide contract management and coordination on dry utility refunds." Among other tasks, the agreement required SML to submit and track Empire's refund requests to Edison.[1] As part of the compensation payable for SML's services, the agreement provided, "Refunds obtained by SML after three years of the date of the contract become property of SML."

Empire's former chief operations officer (former COO) had no specific recollection of the agreement, but acknowledged the signature on it was his. He testified the refund provision was not uncommon in that type of agreement. He understood the

---

[1] Although not entirely clear from the record, it appears Empire contracted with Edison for Edison to extend utility lines to Empire's development projects. Empire deposited money with Edison to pay for the line extensions and some portion of the money was refundable to Empire at a later date.

provision to mean "[t]hat after the third year of this contract, that any refunds that they—that SML obtains are their property, and that that is to be assigned by [Empire] . . . to SML for their collection." He explained, "It was the intent . . . of a contract like this one . . . that once this was executed, that there would be a subsequent agreement executed . . . by someone like [his subordinate Rick Miranda] that would actually give [SML] the formal assignment . . . ."

*Assignment*

A month after entering the agreement, Empire purportedly assigned to SML Empire's rights to refunds from Edison for two development projects: one in Corona, California and one in Hesperia, California. The assignment documents consisted of: (1) a form document dated April 10, 2006, entitled "Assignment of Contract for Extension of Lines or Installation of Electric Facilities" (assignment), and apparently signed by Martinez and Miranda; (2) an exhibit dated April 8, 2006, listing approximate refunds due to Empire from Edison for the two development projects (assignment exhibit); and (3) a California all-purpose acknowledgment form dated April 10, 2006, apparently notarizing Miranda's signature (notary acknowledgment) on the assignment and assignment exhibit. The assignment had a stated effective date of February 1, 2009.

Martinez admittedly filled in all of the blank spaces on the assignment except for Miranda's signature. Martinez also filled out her copy of the section of the notary acknowledgment describing the notarized documents. She handwrote "Assignment of Contract for Line Exp. (SCE)" as the document's description and "April 8, 2006" as the document's date, although the assignment is dated April 10, 2006. Martinez did not see

3

Miranda sign the assignment, but testified the signature on the assignment was consistent with his signature, which she had seen on multiple occasions. She denied forging his signature on the assignment.

The notary who notarized the assignment documents was a former Empire employee. She did not specifically recall the assignment documents and did not know the whereabouts of the journal in which she recorded the notarization, but she had worked directly for Miranda for several months, she had seen his signature 30 to 40 times a day during that time, and she was certain the signature on the assignment was his. Nonetheless, she gave conflicting testimony about Miranda's usual signature style. At her deposition, she testified his usual signature style was a capital R connected to an M. At trial, she testified his signature style varied. The signature style on the assignment documents was just an M and did not include an R.[2]

The former COO did not recall ever seeing the assignment and did not know whether Empire ever formally assigned the refunds for the Corona and Hesperia projects to SML. He confirmed, however, Miranda had the authority to sign the assignment, Miranda commonly signed such documents on behalf of Empire, and the signature on the assignment was consistent with Miranda's method of executing contracts.

The assignment stated on its face it was not effective until it was signed by Edison. Martinez testified she mailed the assignment documents to Edison for signature a few days after she received it from Miranda. A few days afterwards, she contacted Edison

---

[2]    Miranda could not testify about the assignment documents or his signature because he died in 2008.

and was told the documents had been received and sent to Edison's planning department. However, Edison did not have any record of receiving the documents or of Martinez contacting it about the documents in 2006. Further, Martinez admitted she never received a signed copy of the assignment back from Edison and did not follow up with Edison about the matter until years later.

*Refunds*

SML stopped performing services for Empire in 2007. In April 2008 Empire filed a bankruptcy petition. In the latter half of 2008, Edison mailed Empire or Empire-related entities, in care of SML, eight checks for utility refunds totaling $32,223.85. Although the purported assignment was not effective in 2008, SML cashed the checks and kept the money because Martinez could not find the assignment and believed it became effective in 2005.[3] When Martinez later found the assignment, SML did not return the money to Edison or give the money to the trustee of Empire's bankruptcy estate (bankruptcy trustee) because, by then, SML no longer had the money.

In early 2009 Edison mailed Empire or Empire-related entities, in care of SML, four additional checks for utility refunds totaling $14,601.54. SML also cashed these checks and kept the money.

Later the same year, the bankruptcy trustee contracted with SML to help locate estate assets, including any refunds due to Empire from Edison. Although Martinez, as

---

3    It is not clear from the record why Martinez would believe the purported assignment became effective in 2005, when the agreement for which the assignment ostensibly provided compensation was not entered into until 2006.

5

SML's president and chief executive officer, was required to and did sign a statement of disinterestedness, she never disclosed to the bankruptcy trustee that Empire had assigned some of the refunds due from Edison to SML. Further, not long after SML's contract with the bankruptcy trustee commenced, SML submitted a third party authorization form to Edison, which authorized SML to work with Edison on the bankruptcy trustee's behalf. Among the projects covered by the authorization form were the Corona and Hesperia projects for which SML had been receiving and cashing refund checks. According to Martinez, SML submitted the authorization form for these projects because she had forgotten the projects' refunds belonged to SML under the assignment.

In late 2010 SML received a refund check from Edison made out to SML and another entity. When SML contacted Edison to have the check reissued in SML's name alone, Edison indicated it had no knowledge of the assignment. SML sent Edison a copy of the assignment documents; however, Edison initially declined to accept them because they had not been signed by an authorized Edison representative. Instead, Edison requested SML to submit a new assignment with original signatures. Because SML could not provide a new assignment due to Empire's bankruptcy and Miranda's death, Edison agreed to accept the assignment documents, but only from December 16, 2010, forward. Edison then reissued the check and SML deposited it.

6

In January 2011 Edison sent a check for $109,480.75 to the bankruptcy trustee, which SML believed was owed to SML under the terms of the assignment.[4] SML contacted Edison about the matter and Edison refused to reissue the check because the bankruptcy trustee had cashed it. Nonetheless, Edison continued sending SML other refunds purportedly due to SML under the assignment until SML filed the instant action to recover the $109,480.75 refund and other refunds.

A forensic document examiner subsequently analyzed the signatures on the assignment documents. The examiner concluded it was highly probable Miranda did not sign the documents and it was probable Martinez forged Miranda's signature. The parties stipulated Edison paid SML a total of $275,857.84 while Edison believed the assignment was valid.

Following a bench trial at which the above evidence was presented, the court issued a statement of decision finding SML had not established the existence of a valid assignment by a preponderance of the evidence and Edison had established by clear and convincing evidence Martinez forged Miranda's signature on the assignment. Among the bases for its decision, the court noted the forensic examiner's testimony was credible and uncontradicted, the notary's testimony had little weight because it was inaccurate in key respects, and Martinez's testimony was thoroughly undermined by her own actions and by Edison's evidence, including the evidence showing she was engaging in fraud as early

---

[4]     The check replaced a check Edison had originally issued in October 2010 before Edison agreed to accept the assignment.

as 2008, when she cashed checks issued to Empire or Empire-related entities before the purported effective date of the assignment.

DISCUSSION

I

A

SML and Martinez contend we must reverse the judgment for Edison on the complaint because the court's statement of decision did not address two material issues: (1) whether the refund provision in the agreement was sufficient by itself to assign Empire's rights to the refunds to SML; and (2) whether, notwithstanding the forged assignment, Empire intended for SML to receive the refunds and ratified the assignment. However, SML never asserted these theories below. Rather, SML's consistent position below was that it was entitled to the refunds by virtue of the assignment, which was valid and not forged.

" 'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874; *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 340-341.) While there are exceptions to this general rule, they do not apply where the new theory involves controverted questions of fact. (*Panopulos v. Maderis*, *supra*, at p. 341.) Such is the circumstance here because, as Edison points out, SML's opening brief significantly mischaracterizes the former COO's testimony upon which SML relies to

8

support its new theories. The former COO never stated the refund provision was intended to serve as an assignment of the refunds. To the contrary, the former COO stated the provision contemplated the subsequent execution of a formal assignment to effectuate it. He further stated he did not recall ever seeing the assignment and did not know whether Empire ever formally assigned the refunds for the Corona and Hesperia projects to SML. As SML's new theories involve "a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial [Edison] should not be required to defend against it on appeal." (*Ibid.*)

## II

SML and Martinez also contend we must reverse the judgment on Edison's cross-complaint for lack of standing because Edison's counterclaims, if they existed, belonged to Empire. We conclude otherwise.

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) "A party who is not the real party in interest lacks standing to sue. [Citation.] 'A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law.' " (*Redevelopment Agency of San Diego v. San Diego Gas & Electric Co.* (2003) 111 Cal.App.4th 912, 920-921.) "It is well established that a defrauded defendant may set up the fraud as a defense and, in fact, may even recoup his damages by counterclaim in an action brought by the guilty party to the contract." (*Bowmer v. H. C. Louis, Inc.* (1966) 243 Cal.App.2d 501, 503, citing *Paolini v. Sulprizio* (1927) 201 Cal. 683, 686-687; *McCauley v. Dennis* (1963) 220 Cal.App.2d 627, 632.) Thus, Edison was a real party in

9

interest and had standing to assert its counterclaims for fraud and restitution against SML and Martinez.

## DISPOSITION

The judgment is affirmed.  Edison is awarded costs on appeal.


McCONNELL, P. J.

WE CONCUR:

HALLER, J.

IRION, J.