Filed 11/6/24  Vernon Fifty Two v. Barani CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VERNON FIFTY TWO, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AZAR BARANI,<br><br>    Defendant and Appellant. | B331706<br><br>(Los Angeles County<br>Super. Ct. No. BC424856) |

APPEAL from post-judgment orders of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Law Office of Lyle F. Middleton and Lyle F. Middleton for Defendant and Appellant.

Graham Law, Alice M. Graham; and Eli Melamed for Plaintiff and Respondent.

———————————

Defendant Azar Barani appeals the court's post-judgment orders denying her motion to vacate the judgment and her ex parte motion to stay enforcement of the writ of execution and to shorten the time for the court to hear her motion for reconsideration.  Plaintiff Vernon Fifty Two, LLC (Vernon Fifty Two) filed suit against Barani and her company, Vernon Properties, Inc. (Vernon Properties)[1], in connection with its purchase of two commercial properties from the defendants.  A registered process server completed service on Barani through substituted service on "Fatameh Barani, co-occupant" at the address Barani had provided to Vernon Fifty Two.  The trial court entered default judgment against Barani in 2010.  In 2023, Barani moved to set aside the judgment.  Although Barani acknowledged she uses the name Fatameh interchangeably with Azar, she argued she had subleased the property at the time of service and thus could not have been present at the time of service.  On reply, Barani further claimed she was out of the country at the time of service.  The trial court concluded Barani failed to rebut the presumption of valid service and was not entitled to equitable relief from the judgment.  The court subsequently denied her ex parte motion on the grounds she had failed to show good cause and was unlikely to succeed on her motion for reconsideration.

We conclude the trial court did not abuse its discretion in denying either motion and therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Complaint*

In October 2009, Vernon Fifty Two filed a complaint against Barani and Vernon Properties, pleading causes of action

---

[1]     Vernon Properties is not a party to this appeal.

2

for breach of contract, fraud, conversion, and alter ego liability. The complaint alleged that, in November 2007, Vernon Fifty Two and the defendants entered into a purchase agreement concerning two commercial buildings in Vernon, California. Pursuant to the agreement, the defendants drafted and signed an affidavit that granted a limited warranty for the roofs of the buildings. The agreement also provided that the sale incorporated all existing fixtures and built-in appliances. The complaint alleged the defendants violated this provision by removing a large industrial air compressor from the property. When Vernon Fifty Two inquired about the missing air compressor, the defendants demanded that Vernon Fifty Two pay $15,000 for its return. In November 2008, during the effective warranty period, the roof began to leak in several locations. Vernon Fifty Two asked defendants to repair the roof, but defendants failed to do so and Vernon Fifty Two suffered damage to its products and a disruption of its business. The roof could not be repaired and needed to be replaced in its entirety.

*Service*

On December 2, 2009, Vernon Fifty Two filed notices of proof of service attaching the proofs of service of summons on Barani and Vernon Properties. The proof of service for Barani stated that she was served at 236 Bicknell Ave. #7, Santa Monica, CA (Bicknell) by substituted service on November 15, 2009. The process server left the documents with or in the presence of "Fatameh Barani, co-occupant." The registered process server declared under penalty of perjury that the contents of the proof of service were true and correct. After substituted service was made, the process server also mailed the summons and complaint to Barani at Bicknell. The proof of

service for Vernon Properties stated personal service was made on Amir Haghi, a person authorized to accept service of process, at 1373 Westwood Blvd. #201C, Los Angeles, California (Westwood). The proof of service was signed by the same registered California process server under penalty of perjury.

### *Default, Entry, and Renewal of Judgment*

The trial court entered default against Vernon Properties on January 6, 2010, and against Barani on January 22, 2010. In July 2010, Vernon Fifty Two requested that a judgment be entered against the defendants, and on July 9, 2010, the trial court entered judgment in the amount of $98,240.40. Vernon Fifty Two's counsel mailed notice of entry of judgment to Barani at Bicknell and to Vernon Properties at Westwood.

Vernon Fifty Two filed a notice of appeal of the judgment, which was served on Barani at Bicknell and on Vernon Properties at Westwood in September 2010. However, Vernon Fifty Two defaulted on the appeal and it was dismissed.

In June 2020, Vernon Fifty Two applied for a renewal of judgment against Barani and Vernon Properties. Notice of the renewed judgment was served on Barani at Bicknell and on Vernon Properties at Westwood.

### *Motion to Set Aside Judgment and Quash Service*

On March 15, 2023, Barani filed a motion to set aside entry of default and default judgment and to quash service of summons of the complaint. Barani represented that she was not aware of the judgment until November 4, 2022, when she received a notice from the Los Angeles Superior Court regarding the abstract of judgment recorded on October 25, 2022. She stated that she is known by both Azar, her public name, and Fatameh, her religious

4

name, and uses the names interchangeably.[2]  Barani claimed that at the time of service, she had vacated Bicknell and subleased it to Aref Rafsanjani, who resided there from November 15, 2007 through November 3, 2013.  In support of this claim, Barani submitted a sublease agreement between herself and Rafsanjani dated November 1, 2007.  No lease term was identified in the agreement.  Barani also attached a check from Rafsanjani dated August 15, 2010.  Rafsanjani submitted a declaration stating that he subleased Barani's apartment from November 15, 2007 through November 3, 2013, during which time he lived on his own, and that Barani did not reside in or occupy the apartment during that time.  He did not recall ever being approached and handed legal documents concerning Barani or receiving any such documents in the mail.

Barani provided utility bills issued to her at another address in January and March 2008, which she argued established her residence there.  She also submitted a lease agreement from November 2008, which she argued established her occupancy at yet another address, as well as Verizon bills sent to that address in December 2008 and January 2009.  Based on this evidence, she argued that she was not present at Bicknell on the date of service, the service should be deemed defective, and the judgment should be set aside.

In opposition to Barani's motion, Vernon Fifty Two contended that Barani's attempts to establish she lived elsewhere at the time of service failed to address the fact that someone with a name she used was served with the summons at Bicknell.  It further argued that Barani did not claim that she no longer used

---

[2]     The spelling "Fatemeh" also appears frequently in the record, including in documents prepared by Barani.

5

Bicknell personally or for business, and Rafsanjani's claim that he did not recall receiving legal documents for Barani at Bicknell was insufficient to overcome the presumption created by the proof of service of process under California law.

Vernon Fifty Two submitted the articles of incorporation for Vernon Properties, filed April 18, 2006, which identified Barani as the sole director and agent for service of process of the corporation, with Bicknell as the address. On August 18, 2006, Barani filed a statement of information with the California Secretary of State, in which she identified Bicknell as the address of the principal business office of Vernon Properties. She also identified herself as the chief executive officer, secretary, chief financial officer, and sole shareholder and stated her address was Bicknell. Barani identified Amir Haghi as the agent for service of process for Vernon Properties and Westwood as the address for service on the company. On March 24, 2008, Barani filed a statement of information for Vernon Properties representing there was no change in any information previously provided.

On November 3, 2008, Barani filed articles of incorporation for Platinum Properties & Finance, LLC in which she identified herself as the initial agent for service of process and gave Bicknell as her address. In March 2009, Barani filed a statement of information for Platinum Properties & Finance, LLC in which she identified Bicknell as the address for the principal executive office, the office where records are maintained, and as her address and that of the second manager, Tamara Dalir. She also identified herself as the agent for service of process and provided Bicknell as the service address. Barani did not file another statement of information for Platinum Properties & Finance,

LLC until 2022, at which time she identified a new principal address and mailing address.

Vernon Fifty Two also asserted that Barani identified Bicknell as the business address for herself and Vernon Properties in their agreement. The agreement provided the parties could change their addresses by providing notice to the other party, but Barani failed to inform Vernon Fifty Two of a change. Vernon Fifty Two further argued that the motion to set aside the default was untimely under Code of Civil Procedure section 473.5, subdivision (a); any neglect was inexcusable; and Vernon Fifty Two would suffer irreparable prejudice if the judgment were set aside.[3]

In her reply, Barani claimed Bicknell was not a business address, although she admitted she continued to use it "as the address for officers of the corporation and for service of process" and "Bicknell was the address given to serve legal documents to the agent for service of process." Barani also asserted for the first time that she was out of the country on a recreational trip to Germany from November 8 through 29, 2009, thus the person who was served could not have been her. She stated she "didn't think about this until [she] was asked if [she] had taken any trips or had been out of town at the time of the alleged service." In support of this claim, she attached an itinerary and her return ticket dated November 29. She did not provide the ticket for her outgoing flight to Munich. Barani also asserted that she remained the leaseholder of Bicknell until January 30, 2014, when judgment was entered in an unlawful detainer action against her, which "negates [Vernon Fifty Two's] inference and/or

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

7

allegation that [she] continued to use Bicknell until April 25, 2022."

On June 22, 2023, after hearing oral argument, the trial court denied Barani's motion. It found there were neither statutory nor equitable grounds to vacate the default judgment. The court further concluded the evidence Barani provided was insufficient to rebut the presumption of proper service.

***Motion for Reconsideration and Ex Parte Applications***

On July 26, 2023, Barani moved for reconsideration of the court's ruling on the ground its minute order had not mentioned the evidence presented in her reply brief that she was out of the country at the time of service. On August 8, 2023, the clerk of the court entered a writ of execution.

On August 23, 2023, Barani filed an ex parte application to stay enforcement of the writ of execution pending the court's hearing on her motion for reconsideration and to shorten time. The court denied the application on the grounds there was no good cause to stay the action and the moving party was unlikely to prevail on the motion for reconsideration.

On September 1, 2023, Barani filed a notice of appeal from the court's orders on her motion to vacate the default judgment and ex parte motion to stay enforcement of the writ of execution and shorten time on the motion for reconsideration. Several days later, Barani filed an ex parte application for a stay of the enforcement of the writ of execution pending her appeal of the June 22 order. The trial court denied the application.

On September 14, 2023, Barani filed a petition for writ of supersedeas in this court, seeking a stay of enforcement of the writ of execution pending the outcome of the appeal. This court denied the petition.

8

**DISCUSSION**

## I. Law Governing Relief from Default Judgment

### A. Statutory relief from default judgment

Section 473, subdivision (b), provides that "[t]he court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.  Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."

Section 473.5, subdivision (a), provides: "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action.  The notice of motion shall be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or default judgment has been entered."

Although Barani relies in part on the language of section 473 in arguing the court abused its discretion, the parties agree these statutory provisions do not apply here, as Barani sought relief more than a decade after the default judgment was entered against her.  (See *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 [six-month time limit under § 473 "is

9

jurisdictional and the court may not consider a motion for relief made after that period has elapsed"].)

### B.  Equitable relief from default judgment

"After six months from entry of default, a trial court may still vacate a default on equitable grounds even if statutory relief is unavailable." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).)  "To the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857; accord, *Aheroni v. Maxwell* (1988) 205 Cal.App.3d 284, 291 (*Aheroni*) ["A party who seeks to have his default vacated under the court's equity power must make a stronger showing than is necessary to obtain relief under section 473."].)  "We review a challenge to a trial court's order denying a motion to vacate a default on equitable grounds as we would a decision under section 473: for an abuse of discretion." (*Rappleyea*, at p. 981.)

"When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances.  '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court.  Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.'  [Citations.]" (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981–982.)  Two such circumstances are extrinsic fraud and extrinsic mistake.  (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97.)

" 'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence,

10

fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: . . . failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his [or her] day in court.' [Citations.] Extrinsic fraud only arises when one party has in some way fraudulently been prevented from presenting his or her claim or defense." (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300 (*Sporn*).)

" 'In some cases . . . , the ground of relief is not so much the fraud or other misconduct of the [plaintiff] as it is the excusable neglect of the [defendant] to appear and present his . . . defense. If such neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief is present, and is often called "extrinsic mistake." ' [Citations.] However, a motion to vacate a judgment should not be granted where the party requesting equitable relief was guilty of inexcusable neglect." (*Aheroni, supra*, 205 Cal.App.3d at pp. 292–293.)

Appellate courts have set forth "a stringent test to qualify for equitable relief from default on the basis of extrinsic mistake." (*Rappleyea, supra*, 8 Cal.4th at p. 982.) " 'To set aside a *judgment* based upon extrinsic mistake one must satisfy three elements. First, the defaulted party must demonstrate that it has a meritorious case. Second[ ], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Last[ ], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.' [Citation.]" (*Ibid.*) "The primary requirement for the granting of equitable relief is a satisfactory

11

excuse for not presenting a defense to the original action; diligence is a further requirement, not an alternative to the first requirement." (*Aheroni*, *supra*, 205 Cal.App.3d at p. 294.)

## II. The Trial Court Did Not Abuse Its Discretion in Denying Barani's Motion to Set Aside the Default Judgment

The trial court implicitly rejected Barani's contention that extrinsic fraud had occurred. With respect to extrinsic mistake, the trial court found there was no satisfactory excuse for Barani's failure to present a defense and Barani had failed to diligently seek to set aside the default judgment.[4] Contrary to Barani's assertions on appeal, the court's conclusion that these conditions for equitable relief were not satisfied was not an abuse of discretion.

### A. Substantial evidence supports the trial court's conclusion that Barani failed to establish fraud or a satisfactory excuse for her neglect

"Evidence Code section 647 provides that a registered process server's declaration of service establishes a presumption affecting the burden of producing evidence of the facts stated in the declaration." (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 390 (*Zara*).) There is no dispute that the process server who completed the proof of service of summons

---

[4] The trial court did not reach the question of whether Barani had demonstrated she had a meritorious case. Since Barani's failure to establish any element is sufficient to support the court's ruling, we do not consider this element on appeal. However, we note Barani did not submit a proposed pleading with her motion, although she pointed out purported inadequacies in the complaint in her motion to set aside the default judgment and does so again on appeal.

was a registered California process server.  Where "the proof of service filed by plaintiff included the declaration of a registered process server averring that he personally served defendant"—or, in this case, served defendant by substituted service—the defendant is "thus required to produce evidence that he [or she] was not served."[5]  (*Zara*, at p. 390.)

The trial court concluded Barani failed to prove she was not served.  Among other things, the trial found persuasive Vernon Fifty Two's contention that a process server seeking to effect service on Azar Barani could not have identified "Fatameh Barani, co-occupant" as the person served unless it was Barani

_____

[5]    Section 415.20, subdivision (b), provides: "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . .  a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address . . . , in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address . . . , at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left."  The proof of service states the process server attempted on three different days to personally serve Barani and made substituted service on a co-occupant during the third attempt.  Barani does not contend the process server failed to show reasonable diligence, nor does the record support such a conclusion.  (See *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1202 [reasonable diligence was shown where process server attempted to personally serve defendant on three separate occasions and made substituted service on the third attempt].)

herself who was served. The process server had no reason to know Fatameh was another name Barani uses. Barani also failed to explain how a purported co-occupant at Bicknell using one of her names was not her. Thus, whether Barani continued to reside at Bicknell was irrelevant, as service was made at that address on someone with Barani's name.

The trial court also cited documents Barani filed with the California Secretary of State in 2006 identifying Bicknell as Barani's address. A 2008 statement of information stated there was no change to the information previously provided, and in 2009, Barani confirmed Bicknell was her address in connection with another filing with the California Secretary of State. In other words, in multiple documents filed *after* the purported sublease to Rafsanjani began in November 2007, Barani indicated she continued to have access to Bicknell and requested to be served there. The record establishes Barani was the leaseholder for Bicknell until early 2014, when she was evicted. The trial court reasonably concluded that this "strongly suggests that Barani continued to use Bicknell as a business address long after the purported sublet to Rafsanjani." This evidence was likewise sufficient to support the conclusion that service was not fraudulent. (See *Sporn, supra*, 126 Cal.App.4th at p. 1300 [rejecting "accusations that plaintiff 'obtained [the judgment] by stealth[ ]' . . . and engaged in 'improper tactics' " where record showed plaintiff properly served defendant with the summons and complaint].)

Even assuming the "Fatameh Barani" who was served and identified herself as a co-occupant was not Barani, the trial court was not required to accept a self-serving claim that Barani never received any documents served at or mailed to Bicknell. (*Zara*,

14

*supra*, 199 Cal.App.4th at p. 390 [trial court is not required to believe "self-serving evidence contradicting the process server's declaration"]; see also *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 805 ["We accept the trial court's determination of the credibility of witnesses presenting testimony by declaration."].)

The court likewise acted within its discretion in concluding that Rafsanjani's claim that he did not recall receiving any legal documents at Bicknell was insufficient to rebut the registered process server's signed statement made under penalty of perjury that he both served the summons and complaint at Bicknell and mailed them to Bicknell. Even if it were true that Barani somehow did not receive the summons and complaint, she failed to establish it would be excusable neglect for her to provide an address for notice to a business counterparty, fail to update the counterparty when she moved and purportedly ceased using the address for business purposes, and then rely entirely on a subtenant (or other co-occupant) to identify and pass along materials of importance received at the address. (Cf. *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 505 (*Cruz*) ["The fact that the internal mail handling procedures of a company may have resulted in the misplacement of documents that the evidence establishes were delivered to the company is not a sufficient excuse."].)[6]

---

[6] As Vernon Fifty Two further contends, Barani fails to address how, as the chief executive officer and sole director of Vernon Properties, she remained ignorant of the lawsuit when the summons and complaint were personally served on the person she identified as the agent for service of process for Vernon Properties at Westwood, the address she provided in the

15

Barani relies on the declaration she submitted in support of her reply brief below, in which she claimed that she was out of the country at the time of service. However, Barani provided only an itinerary and a return ticket. The court's rejection of this evidence was not arbitrary or unreasonable, as there was no evidence establishing when Barani actually left the country or entered Germany. Further, "[t]he general rule of motion practice . . . is that new evidence is not permitted with reply papers." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537.) "[A] court has discretion to accept arguments or evidence made for the first time in reply," but it is not required to do so. (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1009.) The trial court did not mention Barani's travel to Germany in its minute order and may well have exercised its discretion to disregard this evidence, particularly as there was no reason it could not have been presented in her motion. In any event, as stated, the record was sufficient to establish that service was valid even if the "Fatameh Barani" served was somehow a different person than Barani.

The trial court therefore did not abuse its discretion by concluding the evidence was insufficient to establish extrinsic fraud or a satisfactory excuse for Barani's neglect.

### B. The trial court's conclusion that Barani did not act diligently was not an abuse of discretion

Diligence is generally measured from when the party discovers the default or default judgment against it. (See *Rappleyea, supra,* 8 Cal.4th at p. 982.) " 'The greater the prejudice to the responding party, the more likely it is that the court will determine that equitable defenses such as laches or

---

statement of information filed with the California Secretary of State. Service on Vernon Properties is not contested.

16

estoppel apply to the request to vacate a valid judgment.' [Citation.] . . . If heightened prejudice strengthens the burden of proving diligence, so must reduced prejudice weaken it." (*Id.* at pp. 983–984.) " '[T]he fact that plaintiff fails to show any prejudice resulting from defendant's claimed lack of diligence, although important, is not decisive. Lack of prejudice is *one* of the factors the trial court may properly consider in determining whether defendant acted diligently.' [Citation.] 'The other factor to be considered is whether defendant in the light of the circumstances known to him acted unreasonably in not filing the motion to set aside the default judgment earlier.' [Citation.]" (*Cruz, supra,* 146 Cal.App.4th at p. 509.)

According to her declaration, Barani discovered the judgment against her in November 2022, yet she waited over four months to move to set aside the judgment. The trial court also could have reasonably concluded that Barani was aware of the lawsuit as of November 2009, when she received personal or substituted service at Bicknell and when the company for which she was the sole director was served at Westwood. Whether Barani's delay was over four months or more than a decade, the trial court's conclusion that Barani did not demonstrate diligence in seeking to set aside the default was supported by substantial evidence.

Although not determinative, the trial court could reasonably conclude that Vernon Fifty Two would be significantly prejudiced by Barani's delay of almost 13 years, thus heightening the showing of diligence Barani was required to make. Reversing a default judgment "divest[s] a plaintiff of a property right" (*Rappleyea, supra,* 8 Cal.4th at p. 984)—in this case, one held for a substantial length of time. Vernon Fifty Two also presented

17

evidence that it spent over $15,000 trying to collect on the judgment and faced a substantial risk of spoliation of evidence if the judgment were overturned, since the facts giving rise to the action occurred as far back as 2007.

Barani contends a notice of involuntary lien was not a notice of the lawsuit and that she did not receive actual notice until she went to the courthouse and obtained a copy of the lawsuit in January 2023. However, the notice of lien Barani received contained an abstract of judgment identifying the relevant case information, the amount of the judgment against her, and when the judgment was entered. She cites no authority establishing this was insufficient to establish actual notice. It is also unclear why waiting over two months to obtain the case file after learning of the existence of the judgment and lien would bolster the claim that she acted diligently.

Barani further argues that section 473, subdivision (b), establishes that action taken within six months to set aside a default is per se reasonable. As established above, section 473 does not apply here. Barani cites no authority suggesting the statutory deadline for seeking relief from a judgment governs the trial court's determination as to whether equitable relief is appropriate. Indeed, in *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, when reviewing a claim for equitable relief from a default judgment, the court found the defendant did not act diligently because it waited approximately four months from the date it became aware of the judgment to move to set it aside. (*Id*. at pp. 271, 277–278.)

The trial court's conclusion that Barani failed to act with reasonable diligence was supported by substantial evidence and

supports the court's denial of the motion to set aside the default judgment.

## III.  The Trial Court Did Not Abuse Its Discretion in Denying Barani's Ex Parte Application

Barani contends the trial court also abused its discretion by denying her ex parte request to shorten time on her motion for reconsideration and to stay enforcement of the writ of execution. She again fails to establish the court's ruling was unreasonable under the circumstances.

" 'A court will not grant ex parte relief "in any but the plainest and most certain of cases." ' [Citation.]  Substantively, '[a]n applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.' [Citations.]  'A trial court should deny an ex parte application absent the requisite showing.' [Citation.]" (*Newsom v. Superior Court* (2020) 51 Cal.App.5th 1093, 1097.)  "We review a trial court's ruling on an ex parte application for abuse of discretion." (*People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257.)[7]

Barani contends the trial court improperly prejudged her motion for reconsideration.  We disagree.  Whether irreparable harm was likely to occur if the trial court denied the ex parte motion depended on whether the motion for reconsideration was likely to be meritorious.  That motion was premised on the claim the trial court would have granted the motion to set aside the

---

[7]     Barani cites California Rules of Court, rule 5.151 in support of her claim that the trial court abused its discretion in denying the ex parte motion, but that rule applies to family law matters.

default judgment had it considered the evidence that Barani was in Germany at the time of service. However, as stated, it was within the trial court's discretion whether to consider arguments raised and evidence submitted for the first time with the reply papers. We presume the trial court was aware of this discretion at the time it ruled on the motion for relief from default judgment and either exercised its discretion to disregard the evidence or concluded the evidence was insufficient to rebut the presumption of proper service. (See *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [" ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent" ' "].) Thus, there were no "new or different facts, circumstances, or law" that would justify granting a motion for reconsideration (§ 1008, subd. (a)), and no basis for the trial court to conclude Barani would suffer irreparable harm if the writ of execution was not stayed during the pendency of her motion for reconsideration.

Although Barani also argues that the court erred in denying her second ex parte petition seeking a stay of enforcement of the writ of execution pending her appeal, she did not identify the second motion in her notice of appeal, which was filed before the trial court denied that motion and specifically referenced the two other post-judgment orders. (See *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173 ["The policy of liberally construing a notice of appeal in favor of its sufficiency [citation] does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all."].) Even if we liberally construe the notice of appeal to encompass the court's order on her second ex parte motion, Barani contends both motions were based on the "new" evidence of her trip to

Germany.  They are therefore unpersuasive for the same reason.
The trial court did not abuse its discretion.

## DISPOSITION

The post-judgment orders of the trial court are affirmed.
Vernon Fifty Two shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ADAMS, J.


We concur:




EDMON, P. J.




EGERTON, J.


21